Reese, J.
delivered the opinion of the court.
This bill is filed to obtain relief against usury; a demurrer was filed to the bill, and allowed by the chancellor, upon the ground, that complainant had omitted to make his defence at law; where, without difficulty and embarrassment, as is alledg-ed, it could have been made. The principles applicable to this general subject, have repeatedly come under the consideration of this court, and may be considered as well settled. In the case of Buchanan against Nolen, at Jackson, {ante) this court repelling the exercise of jurisdiction in the particular case, adds: “we do not say, that there may not arise cases, where the principle of relief in a court of chancery after a trial at law, *564 may be applied, especially where usury would be the subject of inquiry. An oppressed debtor in the hands of an artful and heartless usurer might be induced so to- change securities, adding in usurious interest, and for along course of time repeating this process, so as to make it difficult for a jury in the mode of trial before them, to defeat the contrivance and separate the sum really due;” and at the present term in the case of McKoin & Wilkerson vs. Cooley, the court adds, that the usurer might make the courts of justice the medium through which to consummate his usurious contracts, holding over his debtor an influence that would paralyze his will, and prevent him from making his defence. The question in the case before us is whether the facts in this bill show a state of things, falling within the scope of these exceptions; that is embarrassment in the legal forum, arising from complication and multiplication of contracts and securities, or were the very suits at law, and judgments themselves, to be regarded as usurious securities, constituting a portion of the devices resorted to in order to conceal as well as to secure the usury? And we think this case belongs to either category. The bill in brief is, that in 1840 the complainant becoming embarrassed and needing a loan of money, applied to one J. W. Smith, who acted as agent for the defendant Moody, and made to him several notes, within the jurisdiction of a justice, amounting in all to upwards of seven hundred dollars; that Smith endorsed them, and Moody discounted them at 15 per cent, the proceeds amounting to something upwards of six hundred dollars. Shortly after these notes were placed in the hands of another friend, agent and manager of Moody, one M. Smith, a constable.’ Judgments were got, and then to satisfy said judgments, new notes were given to J. W. Smith, endorsed by him to Moody, discounted by Moody at 15 per cent, handed to the same constable, new judgments were taken, new notes given in satisfaction in a constantly recurring series of operations, the last judgments being used to coerce into existence the new notes, and the new notes being taken in satisfaction of the judgments enlarging and accumulating by the addition of usury upon usury, by the inclusion of justices’ fees and the constable’s costs and commissions, and the said notes and *565 judgments constantly multiplying from the necessity of keeping the operations within the jurisdiction of the justice, until after the lapse of two years the aggregate amount rose to $2500, and the number of notes and judgments to thirteen.
It would be idle and delusive to regard these judgments as the result of actual litigation, in which the parties were seeking the one to resist, and the other to enforce the contracts between them. The judgments were but processes in the operation, like the notes themselves, a system of production and reproduction; the parties were never at arms-length; the complainant was throughout the slave of defendant in vinculis. How could relief at law have been easily given upon these thirteen notes, of the aggregate amount of $2500, including principal and interest and usury and costs, repeatedly compounded and recom-pounded, and this too before a justice of the peace, whose jurisdiction is limited to two hundred dollars, and who to do justice would have had to consider of the whole transaction from the beginning, and the entire amount involved in all the cases, and to have given judgment for the true amount?
The transaction as set forth in the form of the bill is a most nefarious one, and the complainant’s claim to equitable.relief under the circumstances very clear.
Let the demurrer be overruled, the decree be reversed, and the defendant answer.